## Maria L. Hamlin *versus* Joseph G. Hamlin.

Where the tenant, having contracted to build a block of houses, for which he was to receive a farm in payment, agreed with the husband of the demandant, that he should build one of the houses for a specified price, and the value of his interest should be applied to pay for a part of those lands to be conveyed by the tenant to him; and said farm having been conveyed to the tenant, the tenant, in fulfilment of his agreement, designated a portion of the farm by metes and bounds for the demandant's husband, into the possession of which he entered, and upon which he built a house, having paid for such portion in full, and continued to reside there a few months till his death,—*it was held*,— there being no written contract for a conveyance, that he had no seizin in the farm to entitle his widow to dower.

The widow of the *cestui que trust*, is not dowable of an estate in which the husband had but an equitable title.

No estoppel in relation to real estate is created by verbal contracts or admissions.

THIS was an action of dower. The marriage of the demandant with Eli Hamlin, and his death, were admitted. It was proved that dower was duly demanded.

To prove the seizin of the husband in the estate in which dower was demanded, the demandant called Elisha Hight, who testified, that Eli Hamlin, for nine or ten months before his death, occupied a part of the estate formerly owned by Asa Clapp, in Scarborough, which had been set off to him by parol partition, as his share, and in which dower was claimed — that the tenant occupied a portion of the same farm, and Nathaniel Hamlin another portion — that Eli built a house on the part he occupied, that he built fences about the house, and on the line between him and Nathaniel, and that he occupied that portion exclusively — and that he heard the tenant say that Eli owned the third of the farm he occupied clear, and he pointed out the bounds of the part by him occupied — that subsequently he said he had offered the widow the house she occupied in Portland, and $200, for her share in the farm — that the tenant said that he would give Maria a deed, but it would not be safe for her, as she owed Mitchell, and might lose it — he said the farm was paid for, and that he was ready to give a deed at any time, but it was not safe to put the deed on record.

William Ross testified that he was present and witnessed a bargain between the demandant, the tenant, and Nathaniel Hamlin, by which they were to give the demandant the house she occupied in Portland, and $200 for the farm in Scarborough — and that at this time, the tenant said that Eli owned the farm where he lived, and that he had not a deed of it because he owed Mr. Mitchell.

Tristram Mitchell testified, that in the fall of 1839, he went with Jacob Mills, the administrator of Eli's estate, to see the farm — that the tenant shew him the bounds of it, and it was proposed to sell a part — that Mills asked his consent, as a principal creditor — that the tenant shew the bounds and lines of the farm — that the tenant knew the object he had in view in examining the farm — and proposed his purchasing the farm, to which he replied that he was not able. He further testified, that in another conversation, in March, 1840, the tenant said the farm was not all paid for — that he and Eli built together two houses on State-street, which were exchanged for the farm in Scarborough, and the difference paid in money.

Jacob Mills testified, that the tenant said Eli was to build one of the two houses on State-street, to be valued at $2500, and that whatever he did on it was to be charged him — and that what Eli did on the house was to be in part pay of the farm — that there was a balance on the books of Eli against him, on account of building the house, to the amount of $1139, and that no charge appeared on the books of Eli relating to the farm.

It further appeared, that Mr. Clapp gave the farm in Scarborough and six hundred dollars for the two houses on State-street.

There were other witnesses called, but their testimony did not change at all the above facts.

Upon this testimony, SHEPLEY J., who presided, ordered a nonsuit, which is to be taken off and a new trial granted, if that opinion was erroneous.

F. O. J. Smith, for the demandant. It is sufficient for the wife, to entitle her to dower, to produce such evidence as will

raise a presumption of the seizin of the husband. *Griggs* v. *Smith*, 7 Hals. 22. She is not bound to produce the title deeds of her husband. *Bancroft* v. *White*, 1 Caines, 190; *Jackson* v. *Wallermire*, 5 Cow. 299; ib. 7 Cow. 353; *Knight* v. *Mains*, 3 Fairf. 42. It is sufficient for her to show her husband to have been in possession during the coverture, and then it is incumbent on the tenant to show a paramount title. Dower follows such a seizin. 2 Bl. Com. 134. The evidence in the case, that the husband was seized, claiming and exercising ownership, having paid for the land, and that the tenant recognized his rights, was sufficient to authorize the jury to pass upon the fact of his seizin. *Hall* v. *Leonard*, 1 Pick. 27.

The common law regards the widow's dower as a right to be favored above that of all claimants, and even of *bona fide* creditors. *Meigs* v. *Dimmock*, 6 Conn. 462; *Griggs* v. *Smith*, 7 Hals. 22; *Shoemaker* v. *Walker*, 2 S. & R. 554; *Combs* v. *Young*, 4 Yerg. 218; *Ramsey* v. *Dozier*, 1 S. Car. R. 112.

The tenant proved no title in himself. The demandant proved that her husband had paid for the farm, and that the tenant had acknowledged his ownership. Parol evidence is admissible to show a party's interest in real estate. 3 Dane's Abr. 365; *Foote* v. *Colvin*, 3 Johns. 216; *Jackson* v. *Matsdorf*, 11 Johns. 96. The tenant is estopped by his admissions and by purchasing the demandant's interest in the farm.

The jury might have found from the evidence, the farm possessed by the husband of the demandant and by the tenant, had been purchased jointly by them, and the title taken by the tenant — in which case, she would have been entitled to dower. *Dolf* v. *Bassett*, 15 Johns. 21. Partnership purchases, in the name of one, confer a right of dower. *Smith* v. *Smith*, 5 Ves. 189.

The widow of an alien is entitled to dower against one claiming through her husband, though at the time he took the conveyance he was not entitled to hold real estate. *Davis* v. *Darrow*, 12 Wend. 65.

*Howard & Osgood*, for the tenant. The demandant proves no seizin in the husband. Dower relates only to an estate in

fee. St. c. 40, § 1. There must be a seizin in deed. 1 Hilliard's Abr. 24. Tenant for years is not seized in fee. 1 Hill. Abr. 120; Stearns on Real Actions, 279. There must be a seizin of such an estate of inheritance as the wife's issue might inherit. Park on Dower, 47, 79; 4 Kent's Com. 48.

The opinion of the Court was delivered by

SHEPLEY J. — The demandant claims dower as the widow of Eli Hamlin deceased, and her rights are to be considered in the most favorable light in which they could be regarded by a jury. The declaration claims the dower in lands conveyed by Asa Clapp to the tenant; and the demand of dower describes the land as thus conveyed. The testimony was received from witnesses introduced by the demandant. Elisha Hight states that the tenant "said he would give Maria a deed, but it would not be safe for her, as she owed Mitchell and might lose it. He said the farm was paid for, and he was ready to give a deed at any time, but it was not safe to put the deed on record." William Ross heard the tenant say "that Eli owned the farm, where he lived, but had no deed of it, because he was owing Mr. Mitchell." From the testimony of Mr. Mitchell, and from that of Jacob Mills, jr. the administrator on the estate of the husband, it appears, that the tenant consented, that the administrator should sell the farm to pay the tenant about four hundred and fifty dollars, which the administrator stated was due. The administrator further states, that the tenant stated to him, that "Eli was to build one of the two houses on State street to be valued at two thousand five hundred dollars; was to do what he could on it, and what he could not do, the defendant was to do and charge Eli for it." And from other testimony it appears, that Mr. Clapp was to convey the lands in Scarborough, of which this farm was a part, and pay six hundred dollars for the two houses on State street. From this and the other testimony the only conclusions, to which a jury could properly come, are, that the tenant bargained with Mr. Clapp to build two houses on State street and to receive payment for them in part by the lands in Scar-

borough; and that he agreed with Eli, that he should build one of the houses to be valued at $2500, and that the value of his interest in that house should be applied to pay for a part of those lands to be conveyed to him by the tenant; that in fulfilment of this agreement a part of the lands had been designated for him; that he had entered into the occupation of that part; had continued to improve it for nine or ten months, and had built a house upon it, having paid for it in full. There is no testimony to prove, that there was any written contract for a conveyance. And a jury would not be authorised to find, that a conveyance had been made, for the testimony rebuts any such presumption, and shews that none had been made. The tenant, had, in conversations with the demandant, admitted her rights, and had, as Ross states, agreed " to give her the house on Gray street and two hundred dollars for her farm in Scarborough." It will be perceived that this agreement must have been made under a misapprehension of their legal rights, as the widow could neither discharge the tenant from any liability to account for the amount received in payment for the farm, nor convey it to him.

The inquiry arises, whether under these circumstances the demandant is entitled to dower in that farm. The legal seizin is according to the title, unless the owner has been disseized. Eli was in possession under a verbal contract to receive a title from the tenant and of course in submission to that title. And a jury would not be authorized to find, that the husband was seized of any legal estate in the premises. And if the tenant should be considered as holding the estate in trust for the benefit of Eli, the demandant would not be entitled to dower. For the widow of the *cestui que trust* is not dowable of an estate in which the husband had an equitable, but not a legal title. *D'Arcy* v. *Blake,* 2 *Sch. & Lef.* 387 ; *Ray* v. *Pung,* 5 B. & A. 561.

It is contended that the tenant, having admitted the title of the demandant and offered to purchase under it, is estopped to deny it. And it is true, as contended, that the books speak of estoppels by matter *in pais;* the cases put, however, do not

apply to mere declarations touching an estate, but to acts, such as an acceptance of an estate, or of a rent, or a holding under a demise.   *Co. Litt.* 252, *a* ; *Binney* v. *Chapman,* 5 Pick. 124.   The tenant does not hold under any title derived from the husband of the demandant, and is not therefore precluded from denying his seizin.   It has been held, " that where an estoppel works on the lands, it runs with the land into whose hands soever the land comes."   *Trevinian* v. *Lawrence,* 1 Salk. 276.   And if the verbal agreements of a party respecting the title to real estate might operate as an estoppel the effect would be to create an interest in the estate without any written evidence of it contrary to the statute of frauds. In the case of *Whitney* v. *Holmes,* 15 Mass. R. 152, it was decided that a written agreement to settle a disputed line agreeably to a survey to be made, could not affect the title either as a conveyance or by way of estoppel, " for no estate," says the C. J.  " can pass according to our statutes but by deed, or it must have amounted to an estoppel, which has not been insisted upon ; no man being barred of his right by way of estoppel but by record or deed."   The demandant fails in the proof of a seizin in the husband, and the nonsuit is confirmed.